## Smith *versus* Philadelphia Bank.

1. A negotiable note drawn in Philadelphia and payable at the Bank of the State of Missouri at St. Louis, was endorsed by third persons, and was discounted by a bank in Philadelphia for the payees under an understanding that the note was to be paid in *funds current at St. Louis*. When due, payment was offered at the bank where payable by the drawers, *in current funds*, which were refused: the endorsers were thereby discharged.

2. After the tender and refusal, and return of the note, the payees drew a draft on the drawers for the amount of the note, payable *in current funds*, which was endorsed by the same endorsers, and given to the bank who held the note, but the draft was not accepted or paid; the endorsers having been previously discharged by the refusal to receive current funds, there was *no consideration* for their endorsement of the draft, (which, being payable in depreciated funds, was not negotiable,) and they are not liable upon it, or on a promise to pay the amount of it.

ERROR to the District Court, *Philadelphia*.

This was an amicable action in case, in which the Philadelphia Bank was plaintiff, and Garret Newkirk and Stephen S. Newkirk, trading under the firm of G. Newkirk & Son, were defendants. G. Newkirk was the surviving partner, and dying, Smith (it was said on the record) was substituted for Isaac Dunton, the executor of his will. He had been appointed executor, but had not acted.

The action was brought to recover $2111.98, less the sum of $500, which the plantiff admits has been paid, with interest on the balance.

The *narr.* contained seven counts:

1st count.—On a promissory note, dated March 13th, 1839, drawn by Baird & Farrel in favor of Heberton & Hibler, payable in twelve months at the Bank of the State of Missouri, at St. Louis, current rate of exchange to be added. Amount of note, $2111.98. Endorsed by Heberton & Hibler and G. Newkirk & Son.

2d count.—On a note of the same description, but without the words "current rate of exchange to be added."

3d count.—On a note of the same description, but omitting the words "payable at the Bank of the State of Missouri," and also the words "current rate of exchange to be added."

4th count alleged that the defendants, in consideration that the plaintiffs, at their special instance and request, would lend to Heberton & Hibler the sum of $2111.98, on the security of a promissory note such as described in the first count, promised to pay the said sum of money in case of the non-payment thereof by the said Heberton & Hibler and the said Baird & Farrel.

5th count alleged, that whereas Heberton & Hibler were indebted to the plaintiffs in the sum of $2111.98 for money loaned, that in consideration of the same, and that plaintiffs would receive a draft

[Smith *v.* Philadelphia Bank.]

drawn by Heberton & Hibler, dated March 30th, 1840, for the sum of $2111.98 in favor of defendants, and by them endorsed—said draft drawn on Baird & Farrel, merchants of St. Louis—and would forbear and give time for the payment of said sum of money, said defendants undertook and promised to pay said sum of money in case of the non-payment of the same by Baird & Farrel or Heberton & Hibler; the payment to be in current funds.

6th count.—Corresponding with the preceding count in all respects, except that it omits the words "in funds current at St. Louis."

7th count.—Common count—money lent and advanced.

The defendants pleaded *non-assumpsit*—payment—set-off, with leave to add, alter and amend—and also special pleas, as follows:

1. That said note being payable at the Bank of the State of Missouri, which bank at the time of the drawing received current funds in payment of notes falling due there—the said bank, before the maturity of the note, resolved to receive only specie, or its own notes in such payments—of which resolution plaintiffs had notice, and thereupon undertook and agreed, at the request of defendants, to deposit said note elsewhere for collection, but neglected so to do—by reason whereof, current funds being tendered in payment, were refused, and the note protested.

2. Tender.

Plaintiff's counsel offered in evidence the following note:

"$2111.98          *Philadelphia, 13th March, 1839.*

"Twelve months after date, we promise to pay to the order of Heberton & Hibler twenty-one hundred and eleven dollars $\frac{98}{100}$ without defalcation for value received, payable at the Bank of the State of Missouri at St. Louis, (current rate of exchange to be added.)          (Drawn)          Baird & Farrel,
          (Endorsed)          Heberton & Hibler,
          Do.          G. Newkirk & Son."

Also the following draft:

"$2111.98.          *Philadelphia, March 30th, 1840.*

"At one day's sight, please pay to the order of Messrs. Garret Newkirk & Son, at the Perpetual Gas Light Insurance Office, in current funds, twenty-one hundred and eleven $\frac{98}{100}$ dollars, being the amount of your note attached hereto.

          Heberton & Hibler,
          (Endorsed)          G. Newkirk & Son.

"Messrs. Baird & Farrel, Merchants, St. Louis."

Plaintiff's counsel then admitted the receipt by plaintiff of $500 on account of their claim, and exhibited a receipt for the same, dated June 13, 1841.

Plaintiff's counsel then offered as a witness *J. B. Trevor*, who, being affirmed, said:

[Smith *v.* Philadephia Bank.]

I am cashier of the Philadelphia Bank, and was so in 1839 and 1840.   (Being shown the note, he said) This note was discounted by the bank for Heberton & Hibler, in November, 1839, near the beginning of the month.   It was discounted on the faith of the endorsement by G. Newkirk & Son.   It would not have been discounted on the credit of Heberton & Hibler alone, without another satisfactory endorsement.   We knew nothing about the drawers. It was returned protested from the Bank of the State of Missouri, to whom, *as our correspondent,* the note had been sent for collection.   After its return, one of the firm of Heberton & Hibler called at the bank and stated that the parties in St. Louis would pay the note in current funds, if sent on again.   The bank agreed to return the note with a draft drawn by the same parties for a similar amount at one day's sight on the drawers of the note.   The draft was sent on to our correspondent, the Perpetual Insurance Company of St. Louis, for collection.   It was returned protested. We agreed to indulge the parties to the note until we could make another trial by sending the draft to St. Louis.   By indulge, I mean we agreed not to sue.

Being cross-examined:

The bank in discounting deducted interest and a certain amount of exchange.   The amount of the exchange deducted was greater than the difference of exchange between a specie-paying and a non-specie-paying place.

The plaintiff having closed his case, the defendant moved for a *nonsuit,* on the ground that the evidence offered by plaintiff would not sustain a recovery under any count of the declaration.

The judge refused to *nonsuit* the plaintiff, whereupon the defendant then and there excepted.

Defendant's counsel, to maintain the issue on their part, then offered the following evidence.

J. B. Trevor—before sworn for plaintiff, and now recalled by the defendant—says: Neither of the firm of Newkirk & Son were at the bank when the proposal for discount was made.   I think Mr. Hibler presented the note for discount: Mr. Hibler brought the note with one or two more, to get a discount.   *It was the understanding of the parties that the note was to be paid in funds current at St. Louis.*   At that time, I presume, the notes of the Bank of the State of Missouri were current there; also, notes of the banks of adjoining States.   The banks had suspended specie payments. The amount of discount was this: we took off the interest for the time the note had to run, and seven per cent. exchange.   The total amount deducted was $193.25.

He further said, *inter alia,* no money was furnished by the bank when the *draft* was drawn.   The note was discounted for Heberton & Hibler.   The bank paid no money to Newkirk & Son.   Their name was on the note when originally presented for discount.

[Smith *v.* Philadelphia Bank.]

On the part of the defendant, Farrel, one of the drawers of the note, was offered, and a release by defendant to him was tendered to him.   Objected to on part of plaintiff, that he was one of the drawers of the note.   Objection overruled, and exception on part of plaintiff.   He stated, *inter alia*, that the firm of Baird & Farrel, then doing business in St. Louis, received a notice from the Bank of the State of Missouri, and at the maturity of the note that he tendered such funds as were then current in St. Louis, such as those of banks of Illinois, Indiana, and Kentucky, in payment, with the addition of the exchange on Philadelphia.   They said they did not take those funds in payment, and refused them.   That the firm continued to pay responsibilities for some time, but subsequently stopped payment.   *   *   *   Don't think we had any *notes* in 1839 that we did not pay.

It was testified by the teller of the bank, that the Bank of the State of Missouri, on the 12th November, 1839, adopted a resolution exacting the payment of all sums due or becoming due at said bank on such notes in specie or its own paper, that the resolution was made public on that day, and was acted on till the 1st March, 1841; and that the Bank of the State of Missouri notified all who had deposited notes for collection, both banks and individuals, that the bank would not collect for them, except in conformity to resolution of 12th November, 1839; and the result was, that in almost every instance, the collection paper maturing was transferred to other institutions.

The note in suit was protested on 16th March, 1840.   Other testimony being given, defendants' counsel offered William Worrell, who testified, that he was a director in the Philadelphia Bank in 1839 and 1840.   That "Garret Newkirk called on me, in February or the beginning of March, 1840, to have some notes transferred from the Bank of the State of Missouri to some other institution for collection, giving for reason, that that bank would receive only specie or its equivalent for notes left there for collection.   I called on the president on the subject, and stated Mr. Newkirk's wish.   The notes referred to were the one in suit and a note of Dyer."

JONES, J., in his charge, stated that the note was endorsed by Heberton & Hibler, and afterwards by C. Newkirk & Son for the accommodation of Heberton & Hibler; and he put the case to the jury on the *fifth* count, saying that there was not evidence to support the other counts.

See assignments of error.

Verdict for plaintiff, for $2214.94 damages.

It was assigned for error:

1. The court erred in charging the jury that a sufficient consideration was alleged in the fifth count of the declaration to sustain

[Smith *v.* Philadelphia Bank.]

a recovery, if such consideration were proven to the satisfaction of the jury. And,

2. In not charging the jury that a recovery could *not* be sustained under any count of the declaration.

3. The court erred in charging the jury that the averment in said fifth count, that Heberton & Hibler were indebted to plaintiff for money loaned at the time of the drawing of the draft of March 30th, 1840, was sustained by the evidence, and that such indebtedness, accompanied by an agreement to forbear suit on the note of March 13th, 1839, was a sufficient consideration in law to sustain the promise alleged in said count.

4. And in not charging the jury that there was no consideration whatever for the draft, and no evidence of any agreement to forbear suit.

5. The judge erred in refusing to charge the jury, that both by the neglect of the bank to transfer the note from the Bank of the State of Missouri to an institution where "current funds" would be received, as they had agreed to do, and by the actual tender of "current funds" by the drawers of the note, and their refusal, the endorsers were for ever discharged, so that no consideration whatever could exist for the draft.

6. And in not charging the jury that neither the draft nor the note were negotiable instruments, and that neither of them created a responsibility in the endorsers.

The case was argued by *Cuyler*, for Smith, plaintiff in error.— He alleged that Newkirk & Son endorsed the note for the accommodation of Heberton & Hibler. He contended that the *note* was not negotiable, and hence the endorsement created no liability. That the note contained the words "current rate of exchange to be added;" that thus it was not for a sum certain, which was an essential property of a negotiable note: *Chitty on Bills* 153; 2 *Miles* 442, a decision on this note. A note payable in current funds is not negotiable: 10 *Ser. & R.* 94; 4 *Watts* 400; or one payable in foreign bills: 4 *Mass.* 245; 6 *id.* 188.

But the drawers made a lawful tender, and the tender and refusal exonerated the endorsers: 5 *Watts* 262.

The endorsement of the *draft* created no liability; no money was furnished at the time, and the draft was not negotiable. The attending circumstances, however they may affect Heberton & Hibler, created no liability as to Newkirk and Son. They never communicated with the bank in relation to the draft. As the tender and refusal discharged the endorsers, there was no consideration on which to found a liability as to them. Forbearance, where there is no right of action, is not a consideration for a promise to pay.

*McCall* and *Read*, for the Bank.—It was contended that there

[Smith *v.* Philadelphia Bank.]

was a new consideration on the part of the endorsers as to the draft, viz. the giving time to Heberton & Hibler, who were liable on the original consideration for the money advanced to them on the discount of the note. . They got the money, and were liable to the bank for money paid and advanced.

It is said that they were discharged by the tender by the drawers. This rests on two grounds : 1. That the note was payable in current funds.   2. That tender of current funds discharged the debt. Parol evidence was not admissible to show that the note was payable in any thing but legal currency.   The note being payable at St. Louis, must be governed by the law of Missouri ; and a case ·in 9 *Missouri Rep.* 697, decides that a note payable in the currency of the state, is payable in gold or silver, or with notes of the Bank of Missouri.   The notes should have been brought into court.   Cited 18 *Law Journal* 222 ; 19 *id.* 268.

*Cuyler*, in reply.—To pay in currency was *the contract.*   The note being drawn and endorsed in Pennsylvania, the law of this State applies to it.   Currency, generally, means *current funds ;* in Missouri, currency means specie or currency of Missouri.

The opinion of the court was delivered February 7th, by
GIBSON, C. J.—The note which induced the promise in suit, was in the usual commercial form, and consequently negotiable.   The agreement of the plaintiff with the payee, in discounting it, to receive depreciated paper in payment of it, was collateral to the note itself, and could not change its commercial character.   According to the uncontradicted testimony of the cashier, there was in fact such an agreement ; and it was, consequently, the duty of the plaintiff to instruct its agent at the place of payment to receive such funds as were afterwards tendered at the day and rejected. It is unimportant that the bank of collection had given notice to its correspondents that it would thereafter receive nothing but specie ; or its own notes in payment of notes remitted to it for collection.   It was the duty of the remitting bank, in this instance, to instruct it to receive payment of this particular note in current paper, as a special deposit ; and, as it neglected to do so, or else its correspondent disregarded its instruction, the endorsers are not the parties to bear the loss consequent upon it.   It was the duty of the bank here to have the agreement executed on the spot ; and it must bear the consequences of its default.   It is a principle not merely of commercial law, that prevention of performance by the party entitled to it, is equivalent to performance itself ; and to this, the rejection of money, as regards a principal debtor who cannot be injured by it, is, perhaps, the only exception.   In this case, the debt would have been paid in discharge of the endorsers who are substantively sureties ; and the discounting bank was answerable

[Smith *v.* Philadelphia Bank.]

for the act of its correspondent to their prejudice.    When the bill was subsequently drawn on the makers of the note, therefore, not only the defendants, but Heberton and Hibler, were discharged from all responsibility whatever.

As it was expressly drawn against depreciated funds, it was not negotiable; but the endorsement of it by the defendants is said to be evidence of a contingent promise.    Possibly it may be so; but what consideration was there to support such a promise?    For-bearance to sue Heberton and Hibler was no better than forbear-ance to sue the defendants themselves.    But forbearance to sue where there was no right of action, is no consideration at all.    It is neither a benefit to the one party nor a prejudice to the other. The compromise of a contested claim is a consideration; but in this instance there had been no contest.    The drawers and en-dorsers of the bill for their benefit and convenience, never sus-pected that they were not liable on their endorsements of the note. In compromising a contested claim, each party gives up something for the sake of peace; but the plaintiff gave up nothing.    It re-linquished no right of recourse to the endorsers, and took its chance of being paid on the bill.    Nothing could be more unlike a com-promise.    If the bank here can have recourse to any one—and probably it cannot—it is to *its* correspondent, the Bank of Missouri.

Judgment reversed.